## TENNESSEE GOOD ROADS COMPANY v. PUTNAM CONSTRUCTION COMPANY.

Middle Section. March 14, 1930.

Petition for Certiorari denied by Supreme Court, June 28, 1930.

Roberts & Roberts, of Nashville, Anderson & Word, of Knoxville, and J. A. Drake, of Smithville, for appellants, Construction Company.

G. R. Gard, of Kansas City, Mo., and O. K. Holladay, of Cookeville, for appellee, Tennessee Good Roads Company.

CROWNOVER, J.   This was a suit of the Tennessee Good Roads Company for the collection of a balance due on a road construction subcontract, dated April 22, 1922, and for damages for the breach of the contract.   Defendants denied they were indebted to complainants and pleaded that complainants had failed to pay the privilege tax required by the State of Tennessee for carrying on the occupation of constructing public roads in Tennessee, as required by chapter 134 of the Acts of 1919, as amended by chapter 108 of the Acts of 1921, and by chapter 75 of the Acts of 1923, and therefore the contract for compensation is illegal and void, and complainants are not entitled to recover compensation and the suit should be dismissed; and that they had not breached the contract.

On April 22, 1922, the Tennessee Good Roads Company, a co-partnership composed of Earl T. Sifers and G. Jay Hunt, having its offices in Kansas City, Mo., entered into a contract with the Putnam Construction Company, a co-partnership composed of J. T. Anderson, et al., residents of Putnam county, Tennessee, by which agreement the Tennessee Good Roads Company contracted to furnish certain specified machinery, and men to operate same, to spread asphalt on thirteen and one-half miles of the public highway constructed by defendants in White county, Tennessee, the work to be done under the supervision of defendants' superintendent.

On June 14, 1923, a supplemental contract was entered into, covering the Memphis to Bristol Highway Project No. 38, in which the complainants were to likewise spread asphalt.

The Tennessee Good Roads Company did not pay its privilege tax and secure a state and county license to engage in the occupation of building and constructing roads.

The work was done during the years 1922, 1923 and 1924, and after the construction was completed, it was claimed by complainants that the books, kept by the defendants, showed a ...umber of items charged against them, with which they should not be charged, and that there was a balance due of $12,000 for materials furnished and labor done, and that they had been damaged $5000 by reason of the breach of contract, for all of which this suit was brought.

It was agreed and an order entered, that auditors be selected to audit the accounts, and the report of the auditors showed a list of contested items amounting to $2924.

At the hearing it was insisted for defendants that they were entitled to a set-off approximating $2500 on account of commissions which they were to receive on asphalt applied in the State of Tennessee by complainants. It was shown by defendants that they had a contract with the Good Roads Corporation (a different company), whereby they were to receive a commission of one-half cent per gallon on asphalt spread in Tennessee. Their theory was that the complainants undertook to complete and carry out the original contract of said Good Roads Corporation.

The case was tried by the Chancellor on oral testimony and he found: first, that there was an item on the books, charged against complainants, of $551.28, the price of a road sweeper, purchased by defendants for use in preparing the roads for the asphalt, and charged by them to complainants, which the Chancellor found was not a proper charge against complainants. Second, the Chancellor found that the statement of the auditors showed that there was a balance due on account to complainants of $879.03; and he decreed that complainants recover $1427.31, the balance of account and the amount of the road sweeper, together with the interest thereon since

the filing of the bill, $192.25, making a total of $1614.56, and ordered a reference to the Master to ascertain the balance due complainants for freight. By agreement the Master reported that there was a balance of $100, thus making the decree of $1714.66 in favor of complainants and against the defendants, notwithstanding the fact that complainants had not paid a privilege tax as required by the statute. He disallowed the commission of one-half cent per gallon on the asphalt.

A motion for a new trial was overruled and the defendants have appealed in error to this court and have assigned errors, which are in substance:

(1) That the Chancellor erred in not dismissing the bill because complainants had not paid a privilege tax.

(2) The court erred in holding that defendants were not entitled to a credit of $551.28, the amount paid for the road sweeper.

(3) The court erred in not allowing the defendants a credit of one-half cent per gallon on 450,000 gallons of asphalt applied by complainants on the roads in Tennessee.

It was agreed by both parties that no privilege taxes were paid by the Tennessee Good Roads Company, or by the defendants. It is provided by chapter 134 of the Acts of 1919, page 457, as amended by chapter 108 of the Acts of 1921, page 230:

"CONSTRUCTION COMPANIES.

"Each foreign construction company with its chief office outside of this State, operating or doing business in this State, directly or by agent, or by any subletting contract, each, per annum, in each county ............................$50

"Each domestic construction company and each foreign construction company, having its chief office in this State, each, per annum, in each county ...........................$50

"The above tax shall be paid by persons, firms or corporations engaged in the business of constructing bridges, waterworks, drainage districts, railroads, public roads, street paving construction work, or other structures of a public nature."

Chapter 75 of the Acts of 1923, page 236, provides that all persons, firms or corporations, foreign or domestic, operating or doing business in the State, directly or by agent, or by subletting contract, engaged in the business of constructing buildings, etc., or other construction work, shall pay, each per annum, in each county, $50.

It is contended by complainants that they were not building or constructing roads but merely applying the asphalt surface, and at most they were only furnishing the machinery and men for the purpose of spreading asphalt for the defendants, and that they were not

therefore engaged in constructing roads, and for this reason said statutes did not apply.

After a careful examination of the statutes and authorities we are of the opinion that the Chancellor was in error and that the complainants were engaged in constructing public roads.

Construct means:

"To put together the constituent parts; to put together the constituent parts of (something) in their proper place or order; to put together the several parts of a thing in their proper place and order; to put together, as the parts of a thing, for a new product; to build; to build together; to build or make; to make; to form; to form and to make; to form with contrivances; to erect; to fabricate. The word implies the performance of work, the fitting of an object for use or occupation in the usual way, and for some distinct purpose, and under all circumstances may be accorded a similar meaning as the word 'provide'. The use of the word in connection with a highway manifestly means the preparation of the highway for actual ordinary use, and not for mere delineation thereof on paper, or the taking of land for the purpose of a street." 12 C. J., 1294-5; 2 Words & Phrases, 1465.

Construction, in general, means:

"The process of bringing together or correlating a number of independent entities, constructing a definite entity, as distinguished from reconstruction, repairing an existing entity." 12 C. J., 1297-8.

After an examination of the dictionaries, we are of the opinion that the word "construct" as used in the Acts above referred to, means to put together the constituent parts of something in their proper place or order; to build; to form; and to make, and should be held to include partial construction, and all work necessary to the completion of the road; and all persons engaged in any definite part of the construction of the road are liable for the tax.

As stated by counsel for appellants, if complainants' contention was sustained, one contractor might make a contract to prepare the grading, another contractor to put on the pavement, still another contractor to do the ditching or shouldering, and there might be three or four contractors engaged in the construction of different parts of the same road, no one of whom would be concerned with work incident to more than one part of the construction, hence they would not be subject to a privilege tax, and the statutes would apply only to contractors who were engaged in constructing a completed highway. We hold that the statutes should not be given this strained construction. Any company entering into a contract to do any ma-

terial portion of the work incident to the construction of a public road is a public road contractor and is subject to the privilege tax.

"A contract made by an unlicensed person in violation of the statute is void and unenforceable; and a suit cannot be maintained on such contract." 37 C. J., 260; 17 R. C. L., 559, sec. 73; Wender v. Lobertini, 151 Tenn., 476, 267 S. W., 367; Shannon's Constitution of Tennessee, Ann., 317, note 172.

This assignment of error must be sustained.

The other assignments of errors become immaterial, but, as the case may be removed to the Supreme Court, we will pass on the remaining assignments of errors.

We are of the opinion that the Chancellor was correct in finding that the road sweeper was not a proper charge against complainants. The contract specifically sets out what machinery complainants were to furnish, and limits their liability. It is insisted that the complainants should be charged with this machinery because one M. C. Boyd, who had previously contracted to do this work for another corporation, had written a letter to the defendants after the complainants had taken over the contract, agreeing that the defendants should purchase the road sweeper for complainants' account. The complainants deny that Boyd had any authority to write such letter and state that they never knew anything about such an agreement until this suit was brought. We agree with the Chancellor that the evidence does not establish that M. C. Boyd was the agent of complainants and had authority to bind the complainants for the purchase of the sweeper. Hence, this assignment of error is overruled.

The third assignment is that the Chancellor erred in not allowing the defendants one-half of a cent per gallon on 450,000 gallons of asphalt spread on the highways of Tennessee by the complainants, and it was insisted that the Chancellor should have found that complainants were bound by the contract to that effect previously entered into by the defendants and the Good Roads Corporation, managed by M. C. Boyd. It was insisted that complainants undertook to complete and carry out said original contract.

The Chancellor held that the defendants were not entitled to a set-off, as they did not prove that the complainants were successors to that corporation.

We are of the opinion that the Chancellor was correct in holding that there was not sufficient proof to show that the complainants were successors to the Good Roads Corporation or had assumed its contracts. While there were some suspicious circumstances, in that M. C. Boyd answered defendants' letter addressed to complainants, from complainants' office in Kansas City, and agreed that defendants should buy the road sweeper for complainants' account, and complainant Sifers admitted that complainants had agreed to pay the Good

Roads Corporation one-half of the net profits, if any, after paying expenses on these contracts for spreading asphalt, yet he emphatically stated that neither the Good Roads Corporation nor Boyd was in any way connected with complainants, and denied that complainants were connected with or had assumed said corporation's contracts with defendants, but on the contrary, the complainants entered into new, independent written contracts with the defendants to spread this asphalt, and knew nothing about these collateral agreements of that corporation and Boyd. Hence we are of the opinion that the proof was insufficient to show that complainants were interested in the original contracts or had assumed the same, and this assignment must be overruled.

The first assignment of error having been sustained, it follows that the decree of the Chancellor must be reversed and the cause dismissed. The cost of the cause including the cost of the appeal is adjudged against complainants and the sureties on their prosecution bond.

Faw, P. J., and DeWitt, J., concur.